UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION F/K/A FIRST SPECIALTY INSURANCE COMPANY, INTERSTATE FIRE & CASUALTY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. VPC-CN-0000075-04, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. UP1900041, PARTNERRE IRELAND INSURANCE DAC,<br><br>　　　　　　　　Petitioners,<br><br>v.<br><br>BERENDO, INC.,<br><br>　　　　　　　　Respondent. | Civil Case No. 1:23-cv-06521<br><br>**APPLICATION TO VACATE OR MODIFY INSURANCE APPRAISAL AWARD** |

　　　　Petitioners Swiss Re Corporate Solutions Capacity Insurance Corporation f/k/a First Specialty Insurance Company, Interstate Fire & Casualty Company, Certain Underwriters at Lloyd's, London subscribing to Policy No. VPC-CN-0000075-04, Certain Underwriters at Lloyd's, London Subscribing to Policy No. UP1900041, PartnerRe Ireland Insurance dac, by and through their attorneys, Robins Kaplan LLP, pursuant to New York Insurance Law § 3404 and Federal Arbitration Act § 10, and for their Application to Vacate or Modify an insurance appraisal award, allege as stated below.  This Court has federal diversity jurisdiction under 28 U.S.C. §1332(a)(1) in that this is a civil action between citizens of different states and/or countries.

### Preliminary Statement

　　　　1.　　This is an insurance coverage dispute arising from a fire loss at a mixed-use property located in Los Angeles, County, owned by respondent Berendo, Inc. The amount of the

loss was submitted to a panel of three appraisers pursuant to New York Insurance Law § 3404 and the provisions of the written insurance policies between Petitioners and Respondent (the "Policies"). The appraisal panel issued its original award on May 25, 2023, and issued a corrected award on or about June 21, 2023.

2. Petitioners bring this action to either vacate the award in its entirety or, in the alternative, modify and correct the award.

3. The award should be vacated in its entirety. Both New York Insurance Law § 3404 and the Policies required party-appointed appraisers to be "disinterested." Insurance appraisers are held to a higher standard of impartiality than traditional arbitrators. In addition to the mandatory disclosures required by New York law, party-appointed appraisers must also disclose to the parties any dealings that create the impression of possible bias. They must also act free of any actual bias or corruption.

4. During the course of the appraisal in this case, Petitioners discovered that Respondent's legal counsel and Respondent's appointed appraiser, Craig Bordon, shared a business address in Inglewood, California. In fact, that address appeared to be counsel's sole business address in the State of California. When questioned about their relationship, Respondent's legal counsel and Mr. Bordon refused to provide any further information. By itself, this gives rise to a reasonable perception of bias, requiring that the award be vacated in its entirety. Upon information and belief, Respondent's legal counsel and Mr. Bordon have also worked together on prior insurance adjustments and/or appraisals, and/or have an ongoing business relationship, which was not disclosed to the parties and which gives rise to a reasonable perception of bias, partiality and corruption, requiring the award be vacated in its entirety. In addition, upon information and belief, the relationship between Respondent's legal counsel and Mr. Bordon also resulted in actual bias and corruption and directly affected Mr. Bordon's conduct in the course of the appraisal, requiring the award be vacated in its entirety.

5. In the alternative, the award should be modified or corrected, on the grounds that the appraisal panel exceeded its powers. Under New York law, the role of an appraisal panel is

limited to determining the amount of damage or loss. An appraisal panel is not permitted to determine legal issues, determine causation, interpret an insurance policy, or decide whether coverage is afforded under an insurance policy. An appraisal panel is also not permitted to make awards in excess of applicable policy limits, for which there is no coverage, or for items of speculative or hypothetical damages. In this case, the appraisal panel exceeded its powers in several respects, including without limitation the following:

a. The award ignored the applicable limits and sublimits of the Policies;

b. The total award failed to credit Petitioners for amounts already paid to Respondent;

c. The award ignored the two-year deadline to repair stated in the Policies in granting an award for RCV depreciation;

d. The awarded included 54 months of lost business income, despite determining that a reasonable period for repair was only 14 months, in contravention of the terms and conditions of the Policies;

e. The award provided for code upgrade costs, even though the damaged building was not rebuilt or replaced, and despite the express terms of the Policies stating there is no coverage for code upgrades unless the damaged building is actually rebuilt or replaced and code upgrade requirements are actually enforced;

f. The award provided for $678,457.72 in "construction management fees," despite no coverage for construction management fees under the Policies, or, in the alternative, a sublimit of $10,000 for "professional fees";

g. The award provided for at least $228,413.15 for damage to the Property's electrical system, despite no evidence that there was any damage to the electrical system, and based solely on the assumption that damage to the electrical system was possible;

h. The award provided for hypothetical future damages not actually incurred;

**Application to Vacate or Modify Appraisal Award**                                                                                      3

    i.  The award provided for damages not caused by the subject fire; and

    j.  The award provided for lost business income in the form of the rental value of units that were vacant;

6. Accordingly, Petitioners seek an order of the Court vacating the award in its entirety or, in the alternative, modifying and correcting the award.

## The Parties

7. Petitioner Swiss Re Corporate Solutions Capacity Insurance Corporation f/k/a First Specialty Insurance Company ("FSIC") is a Missouri corporation with a principal place of business in New York.

8. Petitioner Interstate Fire & Casualty Company ("Interstate") is an Illinois corporation with its principal place of business in Illinois.

9. Petitioner Certain Underwriters at Lloyd's, London subscribing to Policy No. VPC-CN-0000075-04 is subscribed to by Consortium 9226 ("Consortium 9226"). Consortium 9226 is secured by Lloyd's Syndicate 2357 and Lloyd's Syndicate 1458. Nephila 2357 Ltd. is the sole member of Syndicate 2357. Nephila 2357, Ltd. is a British private limited company with its principal place of business in Bermuda. RenaissanceRe Corporate Capital (UK) Limited is the sole member of Syndicate 1458. RenaissanceRe Corporate Capital (UK) Limited is an English Corporation and has its principal place of business in London, England.

10. Petitioner Certain Underwriters at Lloyd's, London Subscribing to Policy No. UP1900041 has one subscribing syndicate, Syndicate TAL 1183 ("Talbot"). Syndicate TAL 1183 has a sole member, Talbot 2002 Underwriting Capital, Ltd. ("Talbot Capital"). Talbot Capital is incorporated in England and Wales and has its principal place of business in London, England.

11. Petitioner PartnerRe Ireland Insurance dac ("PartnerRe") is a private limited company incorporated in Ireland with its principal place of business in Dublin, Ireland.

12. Respondent Berendo, Inc. is a Delaware corporation with a principal place of business in Los Angeles, California.

### Jurisdiction and Venue

13. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1), in that this is a civil action between citizens of different states and countries. For the purposes of diversity jurisdiction, Respondent is treated as citizen of California and Delaware, whereas Petitioners are treated as citizens of Missouri, New York, Illinois, Bermuda, England, and Ireland.

14. Further, this Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because the controversy exceeds the sum of $75,000 exclusive of interest and costs.

15. Venue in this Court is proper. The Policies have a venue selection clause selecting New York as the parties' agreed venue.

### Background

16. The insured property is a commercial mixed-use structure located at 3273 & 3275-3287 Wilshire Boulevard Los Angeles, CA 90010 (the "Property").

17. The Property was insured pursuant to a portfolio of multiple insurance policies for the period May 15, 2019 through May 15, 2020. Through this portfolio, insurance was offered by multiple separate insurance carriers, with each having its own respective written insurance policy, subject to different limits, terms, and conditions.

18. The risk of a claim was shared among the participating carriers according to the terms of each individual policy and was divided between primary and excess layers of coverage. The table below indicates the allocation between the insurance carriers for the primary and first excess layers of coverage:

| Primary | | First Excess | |
|---|---|---|---|
| FSIC | 33.33% | | |
| Starr[1] | 20.00% | Starr | 20.00% |
| Interstate | 10.00% | | |

---

[1] Starr Surplus Lines Insurance Company ("Starr", Arch Specialty Insurance Company ("Arch"), Steadfast Insurance Company ("Steadfast"), Landmark American Insurance Company ("Landmark", Aspen Insurance UK Limited ("Aspen"), and Ironshore Specialty Insurance Company ("Ironshore") are not parties to this suit.

| | | | |
|---|---|---|---|
| Consortium 9226 | 5.00% | | |
| Arch | 10.00% | Arch | 10.00% |
| Steadfast | 9.17% | Steadfast | 9.17% |
| PartnerRe | 7.50% | PartnerRe | 7.50% |
| Talbot | 5.00% | Talbot | 5.00% |
| | | Landmark | 20.00% |
| | | Aspen | 16.66% |
| | | Ironshore | 11.67% |
| | **100.00%** | | **100.00%** |

19. On January 15, 2020, a fire occurred at the Property, and Respondent submitted a claim to the Petitioners for the related loss.

20. Pursuant to the Policies, the first $2 million per occurrence is paid by Berendo pursuant to their annual aggregate fund. Payments were made as follows:

21. Payments totaling $2 million were paid to Respondent from its aggregate fund on March 9, 2020 ($350,000), March 24, 2020 ($1,073,119.52) and May 27, 2020 ($576,880.48).

22. The primary layer Insurers issued a total of $441,543.18 in payments as follows:

   a. FSIC: $111,460.12 on July 21, 2020; $35,706.22 on June 30, 2021;

   b. Interstate and Consortium 9226: $50,162.07 on July 23, 2020; $16,069.41 on July 26, 2021;

   c. Arch: $33,441.38 on July 28, 2020 and $10,712.94 on June 9, 2021;

   d. Steadfast: $30,665.74 on July 28, 2020; $9,823.76 on July 27, 2021;

   e. Starr: $66,882.77 on July 14, 2020; $21,425.87 on June 10, 2021;

   f. PartnerRe: $25,081.03 on September 15, 2020;

   g. Talbot: $16,720.69 on September 15, 2020;

   h. PartnerRe and Talbot (total): $13,391.17 on July 23, 2021.

23. In August 2020, Berendo indicated that it disagreed with the amounts it had received. The adjuster made several attempts to get additional information from Berendo to understand and evaluate its disagreement, but Berendo did not provide the requested information. After several attempts were made to resolve the outstanding disputes, between August 2020 and

April 2021, Petitioners requested an appraisal pursuant to the relevant provisions of the Policies and New York Insurance Law § 3404.

24. Petitioners then appointed Jim Buckley as its party-appointed appraiser, and Respondent appointed Craig Bordon as its party-appointed appraiser.

25. While negotiations over the appointment of a third appraiser to serve as the umpire over the appraisal panel were ongoing, Respondent filed a petition in the Superior Court of California, Los Angeles County, Case No. 21STCP02528, seeking an order appointing an umpire.

26. Following proceedings in that action, on July 12, 2022, the Superior Court issued an order appointing Leslie Marks to serve as umpire. In a separate minute order the same date, the Superior Court administratively closed that case. The Superior Court did not reserve jurisdiction over the appraisal.

27. An appraisal was then conducted by Messrs. Buckley and Bordon, with Mr. Marks serving as umpire. Mr. Buckley and Mr. Bordon each retained consultants and conducted their investigations, and then submitted their positions to the umpire on January 27, 2023.

28. Mr. Marks made his determinations on May 13, 2023, and the original award was countersigned by Mr. Bordon on May 25, 2023.

29. Following objections and requests for corrections or clarifications by Petitioners, a corrected award was issued on or about June 21, 2023, signed by Mr. Marks and Mr. Bordon.

30. Both the original and corrected award state: "All amounts stated herein are without reduction or offset for policy deductibles, limits, sub-limits, or payments made to date, and any such sums will need to be deducted from this measurement before payment is made, if any. The Panelists make no determinations for coverage, causation, or legal issues, which are outside the Panelists' authority and are reserved for the Court."

31. Upon receipt of the award, the insurance carriers paid Respondent $4,083,005.67 on July 17, 2023, which represents the amount payable of the RCV figure awarded in the appraisal after reductions for depreciation, the amount awarded for unincurred code upgrade

costs, the amount awarded for construction management fees, the rental value award beyond the period of indemnity, and prior payments.

33. Each of the Policies provided any party the right to request an insurance appraisal pursuant to New York Insurance Law § 3404. The relevant provision states:

> APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> 1. Pay its chosen appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the Policy and the Company's right to deny the claim.

33. Payment under the Policies is subject to the Maximum Amount Payable provision. The maximum amount payable for the Property is $6,573,427.50 (125% of the Total Insured Value [TIV] for the Property as shown on the Statement of Values) inclusive of the $2 million aggregate layer payment.

### Count One – Vacatur of Insurance Appraisal Award

34. Petitioners repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

35. The Federal Arbitration Act, 9 U.S.C. § 10(a)(1), allows a court to vacate an insurance appraisal award "where the award was procured by corruption, fraud or undue means."

36. The Federal Arbitration Act, 9 U.S.C. § 10(a)(2), allows a court to vacate an insurance appraisal award "where there was evident partiality or corruption in the arbitrators, or either of them."

37. Respondent's party-appointed appraiser, Craig Bordon, failed to adequately disclose his relationship with Respondent's legal counsel, David Furtado.

38. During the appraisal, Petitioners discovered that Mr. Bordon and Mr. Furtado share a business address in Inglewood, California.

39. When questioned about this relationship, Mr. Bordon and Mr. Furtado refused to provide additional information.

40. This alone creates an impression of bias sufficient to vacate the appraisal award in its entirety.

41. In addition, upon information and belief, Mr. Bordon and Mr. Furtado have a prior business or financial relationship that was not property disclosed. Discovery is warranted to fully understand that relationship to demonstrate whether the appraisal was also inflicted with actual bias and corruption.

42. By reason of the foregoing, the Court should issue an order vacating the insurance appraisal award and direct a rehearing before a new appraisal panel.

### Count Two – Correction or Modification of Insurance Appraisal Award

43. Petitioners repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

44. The Federal Arbitration Act, 9 U.S.C. § 11, allows a court to modify or correct an insurance appraisal award where "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."

45. The appraisal award exceeded the power of the appraisal panel and included matter not submitted to them.

46. The appraisal award ignored various policy limits, policy sublimits, and prior payments made to Respondent, which the award itself acknowledged.

47. The award also exceeded the powers of the appraisal panel in several additional key respects. A summary of some of those deficiencies is below.

### *RCV Depreciation*

48. The award included $1,087,811.22 for replacement cost value ("RCV") depreciation, despite the requirements of the Policies that the actual cash value ("ACV") methodology be used when a property has not been repaired or replaced by the deadline to repair. Under the Policies, Section IV – Valuation, "Property that is not repaired or replaced within two (2) years after the date of loss (unless such requirement is waived by the Company in writing) will be valued at Actual Cash Value at the time and place of the loss." The two-year period after the date of loss expired on January 15, 2022, without Respondent repairing the property. Despite that requirement, Petitioners voluntarily provided Respondent a written one-year extension of the deadline to repair. But the property was still not repaired or replaced by January 15, 2023, either. As a result, the appraisal panel exceeded its powers by awarding $1,087,811.22 in RCV depreciation.

### *Code Upgrade Award*

49. The Award includes $673,759.83 for code upgrade costs. However, the Policies do not provide this coverage unless the property is rebuilt or replaced and a code upgrade law or ordinance is actually enforced. There has not been any code enforcement, and Respondent has not repaired or replaced the building. Accordingly, the appraisal panel lacked authority to make this award.

50. For example, the Policies' extend coverage for certain code upgrade costs under Additional Coverages, paragraph C: Demolition and Increased Costs of Construction, states:

> C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage covered under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of such loss or damage regulating the

construction, repair or use and occupancy of the property, the Company shall pay:

* * *

3. Under Demolition Coverage C: For the increased cost of repair or replacement of the damaged building and undamaged part of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building. However, this Company shall not be liable for any such increased cost of construction unless the damaged building is actually rebuilt or replaced[.]

### *Construction Management Fees*

51. Following the loss, Respondent's property manager, Medical Asset Management, backdated an amendment to its agreement with Respondent, adding language that required Berendo to pay the property manager "a Construction Management Fee equal to 10% of the contract amount being supervised by Manager on Owner's behalf. This Construction Management Fee shall only pertain to . . . insurance claim repair work which are not a part of the normal Property operating expenses."

52. Citing that agreement, the award included $678,457.72 for "construction management fees" calculated by taking 10% of the total award for Building Restoration (ACV), incurred building costs, and code upgrades. The award also included $777,349.65 for construction management fees based on 10% of the total, under the RCV Building Restoration finding.

53. Prior to the appraisal of this matter, Petitioner's adjuster requested information from Respondent explaining the service or services provided by the management company to earn this fee, as well as evidence that the fees were actually paid. This was not provided, nor was such evidence offered during the appraisal. Instead, Mr. Bordon only submitted a copy of

the contract referenced above. Nevertheless, the fee was added simply based a 10% calculation of other line items in the award.

54. There is no coverage for the construction management fee under the Policies and there was no evidence submitted to the appraisal panel supporting this claimed amount of loss. But even if there were such coverage, and even if there had been evidence that this expense were actually incurred, it could only be found within the coverages for "Professional Fees," which expressly included a sublimit of $10,000.

### *Loss of Business Income/Rental Value – Period of Interruption*

55. The appraisal panel determined that the period of time needed to effectuate repairs with due diligence and dispatch was 14 months. However, the "Loss of Business Income" calculation in the Award does not start the 14 month period on the date of loss (January 2020), as required by the Policies. Instead, it started the 14 month period on the date of the Award (May 2023). As a result, the Period of Interruption begins in January 2020 and ends, for some of the units, 54 months later (in June 2024), resulting in a total award of $1,811,978.38.

56. The appraisal panel's decision to start the 14 month repair period from the date of the award is a legal, coverage determination that was outside the scope of appraisal and exceeded the powers of the appraisal panel to decide.

### *Hypothetical Electrical System Corrosion*

57. The award included at least $228,413.15 for damage to the Property's electrical system. This was based upon Respondent's appraiser's argument that because the odor of smoke was detected throughout the building, the smoke may have damaged the Property's electrical systems, despite the fact that neither appraiser found evidence of corrosion in the electrical system. In fact, Mr. Buckley's consultant tested all but three of the unit's electrical systems and found no damage to any of them (save for the unit in which the fire originated). Mr. Bordon did not find any evidence of corrosion either. Nevertheless, the appraisal award included damages for corrosion to the electrical system based upon the hypothetical that the electrical system could have been damaged in a fire. It was improper for the panel to appraise a hypothetical loss that

may never have occurred. In addition, such a claim is expressly excluded by the terms of the Policies.

### *Plaster Not Damaged By Fire*

58. The award included approximately $520,798.20 - $1,321,113.03 for losses to repair damaged plaster at the Property. Respondent claimed losses for plaster in certain units during the adjustment that were not damaged by the fire and were rather a result of the age and condition of the Property. Determinations of causation exceed the powers of an appraisal panel and these items should not have been included in the award.

### *Loss of Rental Value for Vacant Units*

59. On the date of loss, the property had 5 vacant units that had been unoccupied since July of 2019 and remained unoccupied at least until December of 2021 (the last date of information provided by Respondent). However, the award provided loss of rental value for 4 out of 5 of these units from January 2020 through June 2024, and from April 2020 through June 2024 for the 5th unit. Whether an insured is entitled to recover rental income for units vacant on the date of loss is a matter of policy interpretation and/or causation and therefore outside the scope of appraisal. These issues went beyond the powers of the appraisal panel to address.

60. By reason of the foregoing, the Court should issue an order vacating the insurance appraisal award and direct a rehearing before a new appraisal panel or, in the alternative, enter an order modifying and correcting the award.

### **Count Three – Correction or Modification of Insurance Appraisal Award**

61. Petitioners repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

62. The Federal Arbitration Act, 9 U.S.C. § 11, allows a court to modify or correct an insurance appraisal award where "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."

63. The appraisal award ignores the Maximum Amount Payable provision in the Policies, which states:

F. MAXIMUM AMOUNT PAYABLE: In the event of covered loss hereunder, liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s),

2. As respects each Location insured by this Policy, one-hundred (110%) percent, except 125% for properties located in the State of California, of the total combined stated values for all categories of Insured Property (e.g. building, contents) and other covered exposures (e.g., time element, extra expense, rental loss) shown for that Location on the latest Statement of Values or other documentation on file with the Company, or

3. The limit of liability or applicable sublimit of liability shown in this Policy or endorsed onto this Policy.

64. The maximum amount payable for damage to the Property under this provision is $6,573,427.50. After subtracting the prior payments (totaling $2,441,543.18) the maximum amount payable is $4,131,884.32.

/ / /

/ / /

/ / /

WHEREFORE, Petitioners respectfully request that this Court:

1. Issue an order vacating the award in its entirety and directing a rehearing before a new appraisal panel;

2. In the alternative, issue an order modifying and correcting the award;

3. Award Petitioners such other and further relief as the Court deems just and proper.

Dated: July 27, 2023

Respectfully submitted,

**ROBINS KAPLAN LLP**

By:  /s/ Annie Huang

Annie Huang (SDNY AH8273)
1325 Avenue of the Americas
Suite 2601
New York, New York  10019
Tel: 212.980.7438
Email:  AHuang@robinskaplan.com

Amy M. Churan (*Pro Hac Vice forthcoming*)
Alexandra S. Fernandez (*Pro Hac Vice forthcoming*)
2121 Avenue of the Stars
Suite 2800
Los Angeles, California 90067
Tel:  310 552 0130
Email: AChuran@robinskaplan.com
         AFernandez@robinskaplan.com

***Attorneys for Petitioners***